UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
------------------------------------------------------------------------ x

SYED FARHAJ HASSAN; THE COUNCIL OF IMAMS
IN NEW JERSEY; MUSLIM STUDENTS
ASSOCIATION OF THE U.S. AND CANADA, INC.;
ALL BODY SHOP INSIDE & OUTSIDE; UNITY BEEF          12 Civ 3401 (SDW)(MCA)
SAUSAGE COMPANY; MUSLIM FOUNDATION INC.;
MOIZ MOHAMMED; JANE DOE; SOOFIA TAHIR;               **ORAL ARGUMENT**
ZAIMAH ABDUR-RAHIM; and ABDUL-HAKIM                  **REQUESTED_____**
ABDULLAH

                                         Plaintiffs,

                        -against-

THE CITY OF NEW YORK,

                                         Defendant.

------------------------------------------------------------------------ x

**DEFENDANT CITY OF NEW YORK'S MEMORANDUM
OF LAW IN SUPPORT OF ITS' MOTION TO DISMISS
THE COMPLAINT PURSUANT TO FEDERAL RULE OF
CIVIL PROCEDURE 12(b)(6) and 12(b)(1)**

*MICHAEL A. CARDOZO*
*Corporation Counsel of the City of New York*
*Attorney for Defendant City of New York*
*100 Church Street*
*New York, New York 10007*

*Of Counsel:  Peter G. Farrell*
*Tel: 212-442-4687*

**Motion Date:  January 7, 2013**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT ........................................................................ 1

STATEMENT OF FACTS .................................................................................. 2

ARGUMENT

    POINT I

        THE SURVEILLANCE COMPLAINED OF IS
        CONSTITUTIONAL ..................................................................4

    POINT II

        THE COMPLAINT FAILS TO STATE A CLAIM
        AGAINST THE CITY OF NEW YORK ......................................5

    POINT III

        PLAINTIFFS LACK ARTICLE III STANDING
        BECAUSE THEIR ALLEGATIONS OF INJURY
        ARE NOT CONCRETE AND PARTICULARIZED
        AND INSTEAD REST ON SPECULATION AND
        CONJECTURE .........................................................................9

        A.   Standing Requirements .....................................................9

        B.   Plaintiffs' Alleged Future Injuries Are Not
            Concrete, Particularized, or Imminent ...........................10

        C.   Plaintiffs Alleged Injuries Are The Result Of A
            Third Party, Not the City of New York ...........................17

    POINT IV

        PLAINTIFFS CLAIM FOR EXPUNGEMENT OF
        RECORDS SHOULD BE DISMISSED ......................................18

CONCLUSION ................................................................................................. 19

## TABLE OF AUTHORITIES

**<u>Cases</u>**                                                                                     **<u>Pages</u>**

*ACLU v. NSA,*
    493 F.3d 644 (6th Cir. 2007) ................................................................... 15

*Argueta v. United States Immigration and Customs Enforcement,*
    643 F.3d 60 (3d Cir. 2011) .................................................................... 5-6

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .................................................................. 1, 5, 6, 7

*Baker v. Carr,*
    369 U.S. 186 (1962) ................................................................... 10

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ..................................................................... 6

*Bistrian v. Levi,*
    696 F.3d 352 (3d Cir. 2012) .............................................................. 6

*Clark v. Twp. of Falls,*
    890 F.2d 611 (3d Cir. 1989) ............................................................... 9

*Constitution Party of P.A. v. Cortes,*
    433 Fed. Appx. 89 (3rd Cir. Pa. 2011).................................................. 16-17

*DaimlerChrysler Corp. v. Cuno,*
    547 U.S. 332 (2006) ................................................................... 10

*Donohoe v. Duling,*
    465 F.2d 196 (4th Cir. 1972) ............................................................... 5

*Duquesne Light Co. v. United States EPA,*
    166 F.3d 609 (3d Cir. 1999) ............................................................... 17

*Eaford v. MR. P. LAGANA,*
    2011 U.S. Dist. LEXIS 59822 (D.N.J. June 6, 2011) ................................................ 17

*Fifth Ave. Peace Parade Comm. v. Gray,*
    480 F.2d 326 (2d Cir. 1973) ............................................................... 14

*Hill v. Borough of Kutztown,*
    455 F.3d 225 (3rd Cir. 2006) ............................................................... 9

*Laird v. Tatum,*
    408 U.S. 1 (1972)............................................................ 4, 5, 13, 14, 15, 16

**Cases**                                                                        **Pages**

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992)...................................................................... 9, 12, 17

*Nour v. New York City Police Dep't,*
    1995 U.S. Dist. Lexis 1096 (S.D.N.Y. 1995) ........................................ 15

*Philadelphia Yearly Meeting of Religious Soc'y of Friends v. Tate,*
    519 F.2d 1335 (3d Cir. 1975) ................................................................ 5, 14

*Phillips Petroleum Co. v. Shutts,*
    472 U.S. 797 (1985) ............................................................................ 10

*Raines v. Byrd,*
    521 U.S. 811 (1997)............................................................................ 10

*Sandy Hook Watermans Alliance, Inc. v. N.J. Sports & Exposition Auth.,*
    2011 U.S. Dist. LEXIS 79488 (D.N.J. July 20, 2011)............................ 18

*Simon v. Eastern Ky. Welfare Rights Organization,*
    426 U.S. 26 (1976) ............................................................................. 17

*Storino v. Borough of Point Pleasant Beach,*
    322 F.3d 293 (3rd Cir. 2003) ............................................................ 13

*Sturm v. Clark,*
    835 F.2d 1009 (3d Cir. 1987) ............................................................. 9

*United Presbyterian Church v. Reagan,*
    738 F.2d 1375 (D.C. Cir. 1984)......................................................... 15

*Warth v. Seldin,*
    422 U.S. 490 (1975)........................................................................... 10

*Werner v. County of Northampton,*
    350 Fed. Appx. 724 (3d Cir. 2009)....................................................... 9

**Statutes**

Fed. R. Civ. P. 12(b)(6) and 12(b)(1) ......................................................... 1

## PRELIMINARY STATEMENT

Defendant respectfully submits this Memorandum of Law in support of its' motion to dismiss the plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(b)(1) on the grounds that (i) the first amended complaint fails to pass the "plausibility" test set out by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-680 (2009) and fails to state a claim; and (ii) the first amended complaint fails to allege concrete and particularized injuries to establish standing under Article III of the U.S. Constitution depriving the Court of subject matter jurisdiction.

In their first amended complaint, plaintiffs allege that starting in early 2002, shortly after the terrorist attacks of September 11th, the New York City Police Department ("NYPD") began a program of illegally targeting the Muslim community for surveillance based solely upon their religion. Plaintiffs allege that this surveillance program reflects a policy, custom or practice of the NYPD to target the Muslim community for surveillance solely on the basis of religion. Plaintiffs allege that this policy resulted in impermissible discrimination against them and they seek to hold the City of New York liable for alleged violations of their rights under the 1st and 14th amendments to the U.S. Constitution. Plaintiffs bring this action despite a three month fact finding investigation by the New Jersey Attorney General which concluded that the NYPD's actions in New Jersey about which plaintiffs complain did not violate New Jersey civil or criminal law.

As demonstrated fully below, the Court should dismiss plaintiffs' complaint for several reasons. First, the NYPD's collection of information by itself is not unconstitutional (Point I). Second, plaintiffs' amended complaint fails to satisfy the plausibility test because the conduct about which they complain is more likely the result of a non-discriminatory intent by the NYPD to deter and detect terrorism in the post 9/11 world, not an intent to discriminate against

New Jersey Muslims based solely upon religion (Point II).  Third,  this Court lacks subject matter jurisdiction because plaintiffs allegations of injury are based upon fears and speculation neither of which satisfy the injury required for standing (Point III).  In addition,  all of plaintiffs alleged injuries arose only after the Associated Press released confidential NYPD documents and it is that disclosure that has resulted in plaintiffs' alleged stigmatization.  Fourth, plaintiffs' request for the expungement of records fails for the same reasons that the collection of information is not unconstitutional in the first instance (Point IV).

For all these reasons, plaintiffs' first amended complaint should be dismissed with prejudice.

## STATEMENT OF FACTS

Plaintiffs filed a complaint on June 6, 2012, with the United States District Court, District of New Jersey, naming the City of New York as the sole defendant.  That complaint was never served on defendant City of New York.  Four months later, on October 3, 2012, plaintiffs filed a First Amended Complaint, which was served on the City of New York on October 4, 2012.  A copy of the First Amended Complaint ("Am. Compl")  is attached as Exhibit A to the Declaration of Peter G. Farrell, dated December 6, 2012 ("Farrell Dec.") and submitted herewith.  In the First Amended Complaint, the relevant allegations for purposes of this motion to dismiss are as follows.[1]

Plaintiffs allege that the NYPD illegally and unconstitutionally targets New Jersey Muslims for surveillance based solely upon their religion.  (Am. Compl ¶ 1).  Specifically, plaintiffs allege that in early 2002, just after the terrorist attacks of September 11th, the NYPD began a secret spying program ("Program") to infiltrate and monitor Muslim life in and around

---

[1] The City accepts the allegations in the First Amended Complaint as true for purposes of this motion.

New York City including New Jersey. (Id. ¶¶ 2, 3, 36). Plaintiffs allege the surveillance in New Jersey was directed at mosques, restaurants, retail stores, schools, associations and on the individuals who own, operate or visit those establishments. (Id ¶¶ 3, 36). Plaintiffs allege that the NYPD collects information through various means including photographs and videos, undercover officers and informants, and that the NYPD has created certain reports containing the information collected. (Am. Compl ¶¶ 4, 5.) As part of the Program, for example, the NYPD created over twenty precinct-level maps of the City of Newark noting locations of mosques and businesses. (Id. ¶¶38, 53.) Plaintiffs also allege that the NYPD prepared various reports based upon the information collected such as a report in February 2006 on discussions in mosques about the controversy surrounding the publication of a Danish artist's cartoons of the Prophet Muhammad and another report in October 2006 after a plane crash in Manhattan. (Id. ¶ 47(c)).

The Amended Complaint further alleges that the NYPD designated twenty-eight countries as "ancestries of interest," two of which are not majority Muslim. (Id. ¶41). Plaintiffs allege that the NYPD only chooses to surveil establishments with "ancestries of interest" if they are Muslim and does not surveil, for example, Egyptians if they are Coptic Christians, Syrians if they are Jewish, or Albanians if they are Catholic or Orthodox Christian. (Id. ¶42).

Plaintiffs alleged injuries "followed the disclosure" of various documents such as the "Newark" report which "has been widely publicized". (*See e.g.* Id ¶¶ 5, 15, 20, 21, 31, 45). Notably, the plaintiffs do not allege that the NYPD disclosed or publicized the documents or the "Program". Plaintiffs fail to mention in their First Amended Complaint that the disclosure of the documents about which they complain was the sole result of the Associated Press covertly obtaining those confidential NYPD documents and publishing them along with a series of articles based upon their own interpretation of the documents. (*See* Farrell Dec. ¶ 3).

The disclosure of the documents has allegedly stigmatized plaintiffs, caused various "fears," and for three plaintiffs, resulted in an alleged loss of customers. (Am. Compl. ¶¶ 11-34). Riddled throughout the Amended Complaint is the conclusory assertion that the "Program reflects" an unconstitutional and discriminatory policy by the City of New York to target the Muslim community for surveillance solely on the basis of religion. (Id. e.g. ¶¶ 36, 57, 67).

After the release by the Associated Press of the confidential NYPD documents, the New Jersey Attorney General was requested to conduct an investigation into the NYPD's activities, reported on by the Associated Press, that form the basis of plaintiffs' complaint. On May 24 2012, after a three month investigation, the New Jersey Attorney General concluded that "the fact finding review, which is ongoing, has revealed no evidence to date that the NYPD's activities in the state violated New Jersey civil or criminal laws." *See* Exhibit B to Farrell Decl., a copy of a press release from the Office of the Attorney General dated May 24, 2012 titled "Office of the Attorney General Takes Steps to Address Out-of-State Law Enforcement Activity in New Jersey Following Fact-Finding Review."[2]

## ARGUMENT

### POINT I

### THE SURVEILLANCE COMPLAINED OF IS CONSTITUTIONAL

Plaintiffs do not allege that the "surveillance" is *per se* unconstitutional. Indeed, the Constitution does not prohibit police observation at public events nor the collection of information at those events, in other words, intelligence-gathering. *Laird v. Tatum*, 408 U.S. 1 (1972). It is of no import whether the police observation is through personal observation or

---

[2] This document can also be found at http://www.nj.gov/oag/newsreleases12/pr20120524b.html.

photography. *See Laird,* 406 U.S. at 12-14 (denying injunction to stop, among other things, surveillance by Army intelligence officers at public meeting); *Philadelphia Yearly Meeting of Religious Soc'y of Friends v. Tate,* 519 F.2d 1335, 1337 (3d Cir. 1975) (allegations of "police photographing and data gathering at public meetings" failed to state a claim). Nor does the Constitution prohibit the retention of the information obtained at public events. *Philadelphia Yearly Meeting of Religious Soc'y of Friends v. Tate,* 519 F.2d at 1337-1338 (affirming dismissal of complaint where allegations included that files were kept indefinitely); *Donohoe v. Duling,* 465 F.2d 196, 202 (4th Cir. 1972) (denying injunction where record showed police department maintained photographs in its files).

Moreover, the Attorney General of New Jersey has stated that after a three-month fact-finding review, no evidence had been found that the NYPD's activities in New Jersey violated any New Jersey civil or criminal laws. *See* Exhibit B to Farrell Decl.

Accordingly, the NYPD's activities about which plaintiffs' complain are not by themselves unconstitutional or illegal. We next turn to the allegations that the NYPD's actions were taken for a "discriminatory" purpose.

## POINT II

### THE COMPLAINT FAILS TO STATE A CLAIM AGAINST THE CITY OF NEW YORK

In order to survive a motion to dismiss, a complaint must contain more than mere labels and conclusions and must state sufficient facts, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). *See also Bistrian v. Levi,* 696 F.3d 352 at 365, 372 (3d Cir. 2012) (affirming dismissal of allegations that officials failed to intervene for lack of plausibility); *Argueta v. United States Immigration and Customs Enforcement,* 643 F.3d 60, 72-

73 (3d Cir. 2011) (holding that plaintiffs failed to allege a plausible *Bivens* claim against four officials).

Determining whether a complaint states a plausible claim for relief will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citations omitted). A plaintiff is not entitled to relief "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.*

*Iqbal* arose out of the federal government's response to the terrorist attacks on September 11, 2001. The plaintiff alleged in his complaint that the FBI's arrest and detention of thousands of Muslim men was based solely on the detainees' race, religion, or national origin. *Id.* at 680-681. The Court found that while plaintiff's factual allegations were consistent with his conclusory claim that the FBI's actions were based solely on detainees' race, religion or national origin, because there was a more likely explanation, the Supreme Court held plaintiffs allegations did not plausibly establish discriminatory purpose. *Id.* In other words, Iqbal "ha[d] not 'nudged [his] claims' of invidious discrimination' across the line from conceivable to plausible." *Id.* at 680.

The Supreme Court relied upon the following facts in reaching its conclusion that there was a more likely purpose for the FBI's actions than discrimination. The Court stated that: "[t]he September 11 attacks were perpetrated by 19 Arab Muslim hijackers who counted themselves members in good standing of all Qaeda, an Islamic fundamentalist group. Al Qaeda was headed by another Arab Muslim – Osama bin Laden – and composed in large part of his Arab Muslim disciples. It should come as no surprise that a legitimate policy directing law enforcement to arrest and detain individuals because of their suspected link to the attacks would

produce a disparate, incidental impact on Arab Muslims, even though the purpose of the policy was to target neither Arabs nor Muslims." *Id.* at 682.

The Court here should similarly dismiss the plaintiffs' amended complaint because just as in *Iqbal*, while plaintiffs' factual allegations may be viewed by some as consistent with their conclusory claim that the NYPD's purpose was driven solely based upon their religion, the more likely explanation is that the NYPD's purpose was part of its overall efforts to deter or detect another terrorist attack rather than target Muslims based upon their religion. A review of plaintiffs' own allegations supports that conclusion.

For example, the plaintiffs allege that the Program was initiated soon after the September 11th terrorist attack. Thus, the initiation of the Program was more likely in response to the terrorist threat than, as plaintiffs allege, driven based on a desire to discriminate based upon religion. Plaintiffs also allege that the Program was directed at not just mosques but also Muslim restaurants, retail stores, schools, and associations and on the individuals who own, operate or visit those establishments and that the NYPD created over twenty precinct-level maps of the City of Newark. These allegations are more likely consistent with the NYPD's efforts to understand post 9-11 where an Islamist radicalized to violence might try and conceal himself to fit in with his surroundings or attempt to recruit others to assist him. A comprehensive understanding of the makeup of the community would help the NYPD figure out where to look in the event it received information that an Islamist terrorist may be secreting himself in New Jersey. Likewise, the factual allegation that the NYPD has identified twenty-eight "ancestries of concern" and that they have identified where those ancestries congregate, which businesses they visit, and the like is more likely a tool to use to help in the response to an Islamist terrorist threat

than driven by the purpose to discriminate against Muslims based upon their religion as plaintiffs allege.

Plaintiffs' allegations about a February 2006 NYPD report on discussions about the controversy surrounding the publication of a Danish artist's cartoons of the Prophet Muhammad and another report in October 2006 after a plane crash in Manhattan further demonstrate that the more likely explanation for the NYPD's actions is public safety rather than discrimination based upon religion. The Danish cartoon on the Prophet Muhammad was a widely publicized incident that caused strong reactions in the Muslim community. *See* ¶5 and Exhibit C to the Farrell Decl. The allegation that the NYPD gauged the reactions in the related communities is more likely consistent with its pursuit of ensuring public safety than a discriminatory intent. The same is true regarding the allegations about the report on the 2006 plane crash in Manhattan. Because it involved a plane flown into a Manhattan building just as in 9/11, prudent policing for public safety would have the NYPD collecting information about the 2006 incident.

While the NYPD's actions are alleged to have disparate impact on Muslims, as the Supreme Court stated, it should come as no surprise that legitimate law enforcement actions in the post 9/11 world may have such consequences, which do not mean that the purpose of the policy is to target Muslims because of their religion. Accordingly, plaintiffs' first amended complaint should be dismissed with prejudice as it fails to pass the plausibility test under Supreme Court precedent.[3]

_____

[3] To the extent that plaintiffs are alleging a "stigma-plus" claim, they have also failed to state such a claim. As a preliminary matter, most of the cases in this Circuit in which this claim is alleged involve a plaintiff who is or was a public employee upon whom certain actions had been taken by state actors. None of the plaintiffs in this case have alleged that they are in such a position. In this Circuit, in order to satisfy the "stigma" portion of the test it must be alleged that

## POINT III

### PLAINTIFFS LACK ARTICLE III STANDING BECAUSE THEIR ALLEGATIONS OF INJURY ARE NOT CONCRETE AND PARTICULARIZED AND INSTEAD REST ON SPECULATION AND CONJECTURE

**A.   Standing Requirements**

Article III of the Constitution limits the jurisdiction of the federal courts to the resolution of "cases" and "controversies." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992). An "essential and unchanging part" of that limitation is the doctrine of standing. *Id.* at 560. The plaintiff bears the burden of meeting the "irreducible constitutional minimum" of Article III standing by establishing three elements:

> First, the plaintiff must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

the purportedly stigmatizing statements were (1) made publicly, and (2) were false. *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3rd Cir. 2006). The plaintiffs fail to satisfy the first prong of this test as nowhere in their complaint do they allege that the NYPD has made any aspect of the surveillance program public (and it is a matter of public record that the Associated Press disclosed the documents referenced in the Amended Complaint). Plaintiffs also fail to satisfy the second prong of this test, as nowhere in their complaint do they allege either a) what the purportedly stigmatizing statements about the plaintiffs were, or b) that they were false. *See Werner v. County of Northampton*, 350 Fed. Appx. 724, 726 (3d Cir. 2009) ("Having failed to allege the falsity of the statement at issue, Werner failed to state a claim under the "stigma-plus" test and his Second Amended Complaint was properl y dismissed on this basis.") Finally, plaintiffs fail to allege a sufficient "plus" to their alleged stigma-plus claim. Both allegations of possible loss of future employment opportunities and outright financial harm have been held to fail the "plus" prong of the claim. *See Clark v. Twp. of Falls*, 890 F.2d 611, 620 (3d Cir. 1989); *Sturm v. Clark*, 835 F.2d 1009, 1013 (3d Cir. 1987).

*Id.* at 560–561.

A particularized injury is one that affects a plaintiff "in a personal and individual way." *Id.* at 561 n.1; *see also Raines v. Byrd*, 521 U.S. 811, 819 (1997). Only a plaintiff so injured will have "'such a personal stake in the outcome of the controversy' to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)).

A plaintiff must also satisfy certain "prudential" standing requirements based on the principle that the judiciary should "avoid deciding questions of broad social import where no individual rights would be vindicated." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 804 (1985); *see also Warth*, 422 U.S. at 500. Prudential standing requires, *inter alia*, that a party "assert his own legal interests rather than those of third parties," *Shutts*, 472 U.S. at 804, that a claim not be a "generalized grievance" shared in by all or a large class of citizens, *Warth*, 422 U.S. at 499, and that a plaintiff must "demonstrate standing for each claim he seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).

**B.     Plaintiffs' Alleged Future Injuries Are Not Concrete, Particularized, or Imminent**

In order to evaluate whether or not plaintiffs have Article III standing, it is necessary to examine the types of injuries alleged by plaintiffs. Nowhere do plaintiffs allege a *concrete* injury caused by the NYPD's alleged surveillance. Rather, plaintiffs' alleged injuries are purely speculative and consist of their fears of what might result from being "surveilled" or their own self-imposed limitations based on those fears.

A look at the allegations of various plaintiff demonstrates this point:

- Plaintiff Hassan alleges that he has a "fear" that his security clearance "would be jeopardized by being closely affiliated with mosques under surveillance" and so

he has chosen to decrease his mosque attendance.  He is also "concerned" that his superiors "will" have diminished trust in him, thereby harming his career "prospects." (Am. Compl. ¶ 13.)

- Plaintiff Unity Beef Sausage Company ("Unity") alleges that the store owner now "fears conducting his legitimate business" and that "he is concerned that anyone who comes in or looks at him from across the street might be an NYPD spy." (Am. Compl. ¶ 21).

- Plaintiff Muslim Foundation Inc. ("MFI") claims that the surveillance "casts an unwarranted cloud of suspicion upon the mosque and its membership."  MFI also alleges that it has changed its religious services and programming as a direct result of the NYPD surveillance so as not "to be perceived as controversial" and that MFI's leaders "feared" that by inviting religious authorities who might nevertheless be "perceived as controversial," their views "would be" attributed to the mosque's membership  (Am. Compl. ¶ 23.)

- Plaintiff Mohammed, a member of the Muslim Students Association at Rutgers University, now avoids discussing his faith or his MSA participation and praying in places where non-Muslims "might see him doing so." (Am. Compl. ¶ 25.)

- Plaintiff Jane Doe alleges that she no longer discuss religious topics at MSA meetings because she has a "fear" that such discussions "would be" misunderstood and taken out of context by those suspicious of her religion. (Am. Compl. ¶ 29).

- Plaintiff Soofia Tahir alleges the surveillance will "likely endanger her future educational and employment opportunities" and "adversely affect her future job

prospects and any other further educational pursuits." She has also changed the way she prays because of a "fear" of being overheard. (Am. Compl. ¶ 29)

- Plaintiff Zaimah Abdur-Rahim "fears that her future employment prospects are diminished by working at two schools under surveillance by law enforcement." She also alleges that "the fact that a photograph of her home appears on the internet in connection with the NYPD's surveillance" has "decreased the value of the home and diminished the prospects for sale of the home." (Am. Compl. ¶ 32).

- Plaintiff Abdul-Hakim Abdullah, Zaimah Abdur-Rahim's husband, alleges that there has been a decrease in the value of his home because of the surveillance. (Am. Compl. ¶ 34).

None of plaintiffs alleged "fears" meets the threshold requirement of concrete or particularized injuries sufficient to establish standing. *See Lujan*, 504 U.S. at 560, 562-568 (where plaintiff's fears that certain funded activities abroad increased the rate of extinction of endangered and threatened species, that allegation was held an insufficient injury for standing purposes).

Plaintiffs injuries are also not actual or imminent. For example, not a single plaintiff alleges that his or her career or employment was in fact injured as a result of the NYPD's alleged surveillance. To the contrary, plaintiff Hassan alleges that he "has received numerous honors for his service in military intelligence." Am. Compl. ¶11. Thus, the alleged NYPD Program, alleged to have begun in 2002, has not had any adverse effects on plaintiff Hassan's career to date. Rather, plaintiffs merely speculate about what they fear may occur in the future. Similarly, the conjecture about a decrease in the value of the home of plaintiffs Abdul-Hakim Abdullah and Zaimah Abdur-Rahim is not actual or imminent as there is no

allegation that they have or are currently selling their home. *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 297-298 (3rd Cir. 2003) (3rd Circuit holds that plaintiffs' injuries are too speculative where they could not demonstrate that their hotel/bed and breakfast was subject to anything other than prospective damages). Moreover, to the extent plaintiffs' alleged injuries are based on their perception of how others may perceive or react to them, their claims are also pure speculation.

Over thirty years ago, in *Laird v. Tatum*, 408 U.S. 1 (1972), the Supreme Court considered allegations similar to those in this case and rejected them as a basis for Article III standing. In *Laird*, plaintiffs sought injunctive relief against the Army's surveillance of civilian political activity. The Supreme Court identified the issue before it as "whether the jurisdiction of a federal court may be invoked by a complainant who alleges that the exercise of his First Amendment rights is being chilled by the mere existence, without more, of a governmental investigative and data gathering activity that is alleged to be broader in scope than is reasonably necessary for the accomplishment of a valid governmental purpose." *Id.* at 10.

Accordingly, the Court found that the plaintiffs lacked standing because "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm [.]" *Id.* at 13-14. The plaintiffs were not able to demonstrate that they were chilled by "any specific action of the Army against them." *Id.* at 3. Thus, the Court refused to grant the plaintiffs what they really sought through the litigation: "a broad-scale investigation, conducted by themselves as private parties armed with the subpoena

- 13 -

power of a federal district court and the power of cross examination, to probe into the Army's intelligence-gathering activities…" *Id.* at 14.[4]

Other courts have followed *Laird* in similarly holding that plaintiffs cannot challenge surveillance activities based merely on the fear that they will sustain a conjectural injury, fear of surveillance itself, or some future speculative harm. In a case with facts similar to this one, the Third Circuit has held that police photographing and data gathering at public meetings, "without more, is legally unobjectionable and creates at best a so-called subjective chill which the Supreme Court has said is not a substitute for a claim of specific present harm or a threat of specific future harm." *Philadelphia Yearly Meeting of Religious Soc. of Friends v. Tate*, 519 F.2d 1335, 1336-1338 (3d Cir. 1975) (where plaintiffs alleged in their complaint that members of the Philadelphia Police Department were present at various demonstrations and meetings and took photographs of many of those in attendance, and that the Department compiled intelligence files on numerous individuals and groups).

Similarly, in *Fifth Ave. Peace Parade Comm. v. Gray*, 480 F.2d 326 (2d Cir. 1973), the Second Circuit applied *Laird* and rejected a claim that anti-war demonstrators' free-speech rights were chilled by FBI investigation into the demonstration, given that plaintiffs could not show specific misuse of any information the FBI might have obtained about them. In that case, the plaintiffs alleged that the FBI maintained and kept records, including photographs, of various individuals who would be attending an anti-war demonstration in *New York* City. And in

---

[4] The Army's information gathering system in *Laird* involved the attendance by Army intelligence agents at meetings that were open to the public, the preparation of field reports describing the meetings (containing the name of the sponsoring organization, the identity of the speakers, the number or persons present, and an indication of whether any disorder occurred), and the collecting of information from the news media. *Id.* at 6. This information was reported to Army Intelligence headquarters, disseminated from headquarters to major Army posts around the country, and stored in a computer data bank. *Id.*

*Nour v. New York City Police Dep't*, 1995 U.S. Dist. Lexis 1096 (S.D.N.Y. 1995) (Keenan, J.),

the Court found the plaintiff's allegations that the surveillance he was subjected to was "nerve-

raking [sic]," "shocking," and impeded the "forward progress of [his] movements," and that he

no longer had a "private life" all insufficient to allege the required objective injury to establish

standing. *Id.* at 8-10.

Several years later in *United Presbyterian Church v. Reagan*, 738 F.2d 1375

(D.C. Cir. 1984), the D.C. Circuit rejected plaintiffs' challenge to enjoin the implementation of

Executive Orders authorizing surveillance activities overseas on the ground that the threat of

surveillance was inhibiting their protected activities.   The D.C. Circuit held that *Laird* precluded

this argument as a basis for standing, noting that cases employing the concept of a chilling effect

"involve situations in which the plaintiff has unquestionably suffered some concrete harm (past

or immediately threatened) apart from the 'chill' itself."   *Id.* at 1378.   The Court in *United*

*Presbyterian* also found plaintiffs' fears of surveillance to be speculative. *Id.* at 1380.

More recently, in 2006, in a case where the plaintiffs challenged the Terrorist

Surveillance Program alleging they were likely to be monitored, the Sixth Circuit held that

plaintiffs' "anticipated harm is neither imminent nor concrete – it is hypothetical, conjectural, or

speculative" and therefore "cannot satisfy the 'injury in fact' requirement of standing." *ACLU v.*

*NSA*, 493 F.3d 644, 662 (6th Cir. 2007).   After that threshold determination, the court went on to

examine each of the plaintiffs' claims and concluded that plaintiffs' alleged First Amendment

"chill" constituted a "self-imposed unwillingness to communicate" that cannot establish standing

under *Laird*. *Id.* at 658, 659-673.   Accordingly, all of plaintiffs' alleged self-imposed limitations

including decreasing their mosque attendance, changing their religious services, or changing

where they choose to pray are not sufficient to establish standing.

Finally, only three plaintiffs make allegations related to their current business. They include:

- Plaintiff All Body Shop Inside & Outside ("All Body Shop") alleges that the number of customers visiting the store has decreased and that some customers have told the owners by telephone that they did not feel comfortable visiting the location because of the threat of NYPD surveillance. (Am. Compl. ¶ 19).

- Plaintiff Unity Beef Sausage Company ("Unity Beef") alleges that "many regular customers have not been coming to the store since the NYPD's Newark report was made public" and that some customers have called to say "they are no longer comfortable visiting the store." (Am. Compl. ¶ 21).

- Plaintiff The Council of Imams in New Jersey ("CINJ") is a membership organization comprising a dozen New Jersey mosques.  Two of the mosques, Masjid al-Haqq and Masjid Ali K. Muslim, allege that there has been a decline in attendance and contributions as a result of the NYPD's alleged surveillance. (Am. Compl. ¶ 15.)

While plaintiffs All Body Shop and Unity Beef allege fewer customers neither alleges a loss of revenue or income and thus have not alleged a concrete economic injury.  In addition, while two mosques out of a total of twelve in the membership of plaintiff CINJ allege a "decline in attendance and contributions,"  plaintiff CINJ does not allege that there has been an overall decline in revenue or income at those mosques as a result of the complained of actions.  In addition, CINJ's  conclusory assertion that the decline in attendance and contributions "followed the disclosure" of the Program does not satisfy the "causal connection" prong of standing as it is pure speculation and not traceable to the defendant's alleged actions.  *Constitution Party of P.A.*

*v. Cortes*, 433 Fed. Appx. 89, 92 (3rd Cir. Pa. 2011) (3rd Circuit finds that the plaintiffs clearly

failed to establish causation as there were no allegations in the complaint, other than conclusory ,

that the action alleged was responsible for the injury, and that the District Court could not rule

out that the injury could have been due to other factors, or the actions of some other third party.)

*Eaford v. MR. P. LAGANA*, 2011 U.S. Dist. LEXIS 59822, *6 (D.N.J. June 6, 2011) ("The causal

connection between Defendants' alleged actions (placing Plaintiff's inmate account on hold) and

Plaintiff's litigation difficulties is too attenuated to constitute the causal connection required for

standing under *Lujan*.) Accordingly, these allegations are insufficient to satisfy either the first

or second prong of the test for standing under *Lujan*.

**C.      Plaintiffs Alleged Injuries Are The Result Of A Third Party, Not the City of New York**

Assuming that plaintiffs have asserted a injuries in fact to satisfy Article III

standing, which they have not, their injuries are not fairly traceable to the actions of the

defendants. Standing requirements dictate that a federal court act only to redress injury that

fairly can be traced to the challenged action of the defendant, and not injury that results from the

independent action of some third party not before the court. *Simon v. Eastern Ky. Welfare Rights

Organization*, 426 U.S. 26, 41-42 (1976); *Duquesne Light Co. v. United States EPA*, 166 F.3d

609, 613 (3d Cir. 1999) (finding standing requirement not met where injury is manifestly the

product of the independent action of a third party).

Here, as stated previously, plaintiffs specifically omit from their First Amended

Complaint that the disclosure of the documents about which they complain was the sole result of

the Associated Press ("AP") publishing the documents along with a series of articles based upon

their own interpretation of the documents.[5]   When the AP published some of the documents, for example the Newark report, it did so without redacting the names or addresses of the entities therein.  *See* Farrell Dec. ¶3.  If anything, it is the ***disclosure*** of the documents by the Associated Press in unredacted form which left in identifying information – not the NYPD's actions – that has caused plaintiffs' alleged injuries.  *See e.g.*, Am. Compl. ¶¶ 15, 19, 21.  To be clear, the City neither challenges the AP's right to investigate or expose alleged wrongdoing nor does the City endorse unlawful surveillance tactics.  Rather, the City maintains that no unlawful surveillance took place and that it is the Associated Press's actions of publishing unredacted documents which constitutes an independent action of a third party not before the court and breaks the causation requirement.

The fact that nowhere in the Amended Complaint do plaintiffs allege that they suffered any harm prior to the unauthorized release of the documents by the Associated Press confirms that plaintiffs' alleged injuries flow from the unauthorized disclosure of the documents by the Associated Press.

**POINT IV**

**PLAINTIFFS CLAIM FOR EXPUNGEMENT**
**OF RECORDS SHOULD BE DISMISSED**

Plaintiffs' request for the expungement of records "made pursuant to past unlawful spying" should be dismissed for all the same reasons previously set forth including that the acts complained of in and of themselves are not unconstitutional (Point I),  that plaintiffs fail to state a claim (Point II), and because plaintiffs lack standing (Point III).

---

[5] On a motion to dismiss pursuant to 12(b)(1)  for lack of subject matter jurisdiction, the Court is allowed to consider facts outside the complaint. *See Sandy Hook Watermans Alliance, Inc. v. N.J. Sports & Exposition Auth.*, 2011 U.S. Dist. LEXIS 79488, *2 (D.N.J. July 20, 2011) (court may properly consider documents specifically referenced in the complaint, as well as documents that are part of the public record).

## <u>CONCLUSION</u>

**WHEREFORE,** for the reasons set forth above, plaintiffs' first amended complaint should be dismissed in its entirety with prejudice, together with such other and further relief as this Court may deem just and proper.

Dated:      New York, New York
            December 6, 2012

                                 MICHAEL A. CARDOZO
                                 Corporation Counsel of the City of New York
                                 *Attorney for Defendant City of New York*
                                 100 Church Street
                                 *New York, New York* 10007
                                 (212) 442-4687

                    By:          _____s/ Peter G. Farrell_____
                                 Peter G. Farrell
                                 Senior Counsel